DR. THOMAS A. LITTLE v. NORTH CAROLINA STATE BOARD OF DENTAL EXAMINERS

No. 8210SC1035

(Filed 20 September 1983)

**Physicians, Surgeons and Allied Professions § 5— revocation of dentist's license— substantial supporting evidence**

There was substantial evidence in the whole record to support a decision by the Board of Dental Examiners revoking a dentist's license to practice dentistry for violations of the North Carolina Dental Practice Act, G.S. Ch. 90, Art. 2, by the improper delegation of professional duties to dental assistants, by the unauthorized prescription of Valium to family members, and by dental malpractice in the treatment of two patients.

APPEAL by petitioner from *Lee, Judge.* Order entered on 21 May 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 25 August 1983.

*Kenneth Hill for petitioner appellant.*

*Bailey, Dixon, Wooten, McDonald & Fountain by Ralph McDonald and Carson Carmichael, III for respondent appellee.*

BRASWELL, Judge.

Dr. Thomas A. Little, a licensed dentist, seeks appellate review of the trial court order affirming final agency decision of the North Carolina State Board of Dental Examiners which revoked Dr. Little's license to practice dentistry. The Board of Dental Examiners found that the evidence supported the charges that Dr. Little had violated the North Carolina Dental Practice Act, G.S. 90, Article 2: by improper delegation of professional duties to dental assistants Linda D. Horton, David Terry Maness, and Connie Watts Verricchia; by unauthorized prescription of Valium to family members; and by dental malpractice in the treatment of patients Hubert J. McNeil and Ellen Rommel. We affirm.

Dr. Little brings forward eight questions for review from his assignments of error. The first six questions address the issue of whether the findings of fact and conclusions of law of the Board, adopted by the trial judge, are supported by substantial evidence in view of the entire record as submitted. The seventh question, being derivative of the first six, challenges the Board's order of 23 November 1981 as being arbitrary and capricious. The eighth question similarly challenges the trial court's order of 21 May 1982 as being arbitrary and capricious. The scope of our judicial review is controlled by the Administrative Procedure Act, G.S. 150A, Art. 4. The standard of our review is chartered by G.S. 150A-51(5) which requires us to determine whether the findings and conclusions are supported "by substantial evidence . . . in view of the entire record as submitted." By case law an insignificant variation of the words "entire record" has become "whole record," and this is the test we must apply. *A & T University v. Kimber,* 49 N.C. App. 46, 270 S.E. 2d 492 (1980); *Thompson v. Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977).

In an administrative proceeding, it is the prerogative and duty of that administrative body, once all the evidence has been presented and considered, "to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw

inferences from the facts, and to appraise conflicting and circumstantial evidence. [Citations omitted.] The credibility of witnesses and the probative value of particular testimony are for the administrative body to determine, and it may accept or reject in whole or part the testimony of any witness." *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 406, 269 S.E. 2d 547, 565 (1980).

When the Agency decision is on review before the superior court judge, his consideration of the case is that of an appellate court. *In re Faulkner*, 38 N.C. App. 222, 247 S.E. 2d 668 (1978). The reviewing court, both trial and appellate, "while obligated to consider evidence of record that detracts from the administrative ruling, is not free to weigh all of the evidence and reach its own conclusion on the merits." *Savings and Loan Assoc. v. Savings and Loan Comm.*, 43 N.C. App. 493, 497, 259 S.E. 2d 373, 376 (1979). The "whole record" test demands that "[i]f, after all of the record has been reviewed, substantial competent evidence is found which would support the agency ruling, the ruling must stand." *Id.* at 497-98, 259 S.E. 2d at 376. In this context substantial evidence has been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E. 2d 882, 888 (1977). Therefore, in reaching its decision, the reviewing court is prohibited from replacing the Agency's findings of fact with its own judgment of how credible, or incredible, the testimony appears to them to be, so long as substantial evidence of those findings exist in the whole record. *In re Appeal of Amp., Inc.*, 287 N.C. 547, 215 S.E. 2d 752 (1975).

By his recourse to the appellate division of our courts, the petitioner also seeks to have the action of both the trial tribunal and administrative agency set aside by alleging that the action was both arbitrary and capricious. *See* G.S. 150A-51(6). These imposing terms apply "when such decisions are 'whimsical' because they indicate a lack of fair and careful consideration; when they fail to indicate 'any course of reasoning and the exercise of judgment,' [citation omitted] or when they impose or omit procedural requirements that result in manifest unfairness in the circumstances though within the letter of statutory requirements." *Comr. of Insurance v. Rate Bureau, supra*, at 420, 269 S.E. 2d at 573, *reh. denied*, 301 N.C. 107, 273 S.E. 2d 300 (1980). In asserting his position Dr. Little argues, in substance, as to each question

presented for review that there was contradictory evidence in the entire record which materially conflicted with the evidence found and accepted as credible by the Board of Dental Examiners, that this contradictory evidence was substantial and overlooked or not considered by the Board, and that by rejecting other evidence the order reflects that the Board reached its decision in an arbitrary and capricious way. We disagree and hold that material, relevant, and substantial evidence in the whole record support the final Agency decision and the decision of the superior court.

An examination of three of the questions presented will suffice to demonstrate the basis for our conclusion.

As to the charge that Dr. Little improperly delegated duties to Connie Watts Verricchia which constituted the practice of dentistry, the unchallenged evidence shows the following. Ms. Verricchia was employed as a dental assistant in Dr. Little's office from July through December 1980. During this period she was not licensed as a dentist or dental hygienist, nor had she received the necessary formal training or experience to qualify as a Dental Assistant II under the rules and regulations of the Board. She did not qualify to take dental X rays until October 1980. Her first employment in any dental office was in January 1980.

The evidence received from Ms. Verricchia which is challenged by approproiate exceptions is in the Agency's order as fact-finding paragraphs 18 through 23. In each instance the opening words of the paragraphs are: "Having considered conflicting evidence, the Board finds that Respondent directed and allowed Ms. Verricchia during the term of her employment with him to . . . ." The descriptive words that follow this introduction indicate the extent to which Ms. Verricchia was allowed to practice dentistry. For instance, she was permitted: to remove from the oral tissues of his patients, including Ellen Rommel, bone splinters and on occasion root tips which had surfaced after extractions by respondent; to apply topical anesthetic and then to remove the bone particle with cotton pliers if possible, and if not, with Rongeur's forceps; to diagnose and treat dry sockets; to adjust and grind down full dentures; to adjust partial dentures; to take impressions of edentulous patient's mouths; to perform "hot" or chair-side relines of dentures; and to take X rays.

These findings of ultimate facts are fully supported by a reading of the evidentiary facts in the transcript. For example, the transcript reveals that Ms. Verricchia took 80% of the X rays that were taken during her period of employment and this included taking panorexes X rays of the patient Ellen Rommel in her first month of employment. It also shows that when patients returned after extractions complaining of pain, Dr. Little delegated solely to her care those patients he had labeled as problem patients. Her testimony in the transcript details the procedure she used when attending a patient with bone splinters. She would take a Q-tip and rub a topical anesthetic on the area, then take cotton pliers to try to lift the bone spicules, or would use a Ronguers instrument which trimmed the bone. With dry or infected sockets she would clean it out and pack it with sterile gauze and put some medication on it. She performed these procedures with respect to bone splinters on patient Ellen Rommel several times. As for the total patients for the office, Ms. Verricchia saw about 20% on a daily basis. The testimony of Ms. Verricchia was supported and corroborated in various parts by the testimony of Ellen Rommel, David Terry Maness, and Jane Venters.

Dr. Little testified himself and offered evidence through several witnesses. He refuted the fact that Ms. Verricchia was authorized to take X rays before she had completed her technical course in October 1980 and that he permitted her to remove splinters and root tips or to diagnose or treat dry sockets. The substance of Dr. Little's testimony was corroborated by testimony from James Bradley, Susan Summerlin and Jane Venters. Ms. Venters also testified that Ms. Verricchia had attempted to enlist her help in various legal actions against Dr. Little.

The crux of Dr. Little's argument is that "[i]n assessing the weight and credibility of Connie Watts Verricchia's testimony, the Board completely disregarded the testimony of Appellant that she was the organizer of a group of disgruntled employees whose purpose was to ruin Dr. Little's practice." He contends that "Ms. Verricchia's attempts to organize various forms of legal action to harass [him] renders her testimony or that of her colleagues concerning her duties in the clinic inherently suspect and unreliable." Dr. Little also argues that the testimony of David Terry Maness and Linda Horton was similarly impeached by evidence which

revealed that Maness had unsuccessfully sued Dr. Little after being discharged from the lab and that Horton had conducted a meeting of fellow employees to review a book listing all violations of statutes which a dentist could be charged with before a dental board.

Thus, the real challenge in the appeal becomes the credibility of the witnesses. We hold there was sufficient substantial evidence to support the findings of fact and sufficient findings of fact to support the conclusions of law of the Board and of the trial court on all the issues. Certainly conflicts in the evidence existed. Impeachment testimony appears in abundance, but the quality and believability of the evidence is solely for the fact-finder to determine and not the reviewing court. The Board has resolved the conflicts in the testimony of all the witnesses and evidence before it, and their findings, being supported by competent evidence and not arbitrary or capricious, are conclusive in the appellate division. *In re Wilkins*, 294 N.C. 528, 242 S.E. 2d 829 (1978).

As to the charge of unauthorized prescription of Valium to family members, the Board found: that Valium is a Controlled Substance, according to G.S. 90-92, Schedule IV; that Dr. Little purchased Valium by mail, totaling 3,000 ten milligram tablets on 9-12-79, 1-24-80, 7-24-80, 12-1-80, and 3-13-81 (a span of about 681 days); and that he dispensed the Valium to his wife, his sister-in-law, and his mother-in-law. It was dispensed to his wife for agoraphobia, vertigo and stress, and it was cheaper to order in quantity. Appellant did not except to any of the above findings, but did except to the following findings: (1) "Respondent does not dispense Valium to patients in connection with his dental practice;" and (2) "Respondent ordered Valium and dispensed it to Ms. Rinnert [his sister-in-law] and Mrs. Miles [his mother-in-law] to ease stress. Respondent does not take care of either Ms. Rinnert's or Mrs. Miles' teeth and thus has no treatment records."

As to the first exception in the above paragraph, the transcript reveals this uncontradicted exchange:

"Q. Now you do not dispense valium in connection with your dental practice, do you?

A. Not with my dental practice, no."

As to the second exception above, the transcript clearly indicates that Dr. Little does not have treatment records for Ms. Rinnert, or Mrs. Miles, but does have records that he bought the pills and the number of pills distributed to his wife, sister-in-law, and mother-in-law, even though he does not take care of their teeth. Because the evidence fails to support this assignment of error, it is overruled.

As to the charge of dental malpractice in the treatment of patient, Ellen Rommel, the findings of fact by the Board, to which no exceptions were made, show that Ellen Rommel became Dr. Little's patient for the first time on 29 July 1980. She complained of pain in the upper left part of her mouth. She asked Dr. Little to "fix my teeth and pull what needed to be pulled." He conducted a clinical examination, caused X rays to be taken, and "advised [her] that she had periodontal disease (pyorrhea) and advised her that all of her teeth should be pulled." Dr. Little did not offer any treatment option other than extraction of all her teeth. Dr. Little did not note on his record of treatment any diagnosis of either periodontal disease or rampant caries to an extent necessary to require extraction of all her teeth.

Upon Dr. Little's advice Ms. Rommel consented to the extraction of all her teeth. On 29 July 1980, her upper teeth were extracted and an immediate denture delivered. On 17 October 1980 her lower teeth were extracted and an immediate denture delivered.

Dr. Little contests the Board's findings that Ms. Rommel did not have periodontal disease so extensive as to require extraction of all her teeth. He also challenges the findings that X rays taken by him indicate substantial bone support and only moderate periodontal disease, and that most of her teeth, with the exception of four which were badly decayed, could have been restored.

The Board found that "[t]he standard of practice on July 29, 1980 through October 17, 1980, for general dentists licensed to practice in North Carolina was that having clinically examined a patient and reviewed that patient's x-rays indicating caries and moderate periodontal disease the patient should have been advised of treatment options available, including restoration of carious lesions, extraction of nonrestorable teeth, treatment of periodontal disease and replacement of extracted teeth with cast

partials." The Board concluded that "most of her teeth could have been saved if properly treated," so that Dr. Little's advice to Ms. Rommel that she had periodontal disease requiring immediate extraction of all her teeth "did not comply with the standard of practice in North Carolina and was a dereliction from professional duty resulting in injury, loss or damage to Ms. Rommel, thereby constituting negligence and malpractice in the practice of dentistry."

Dr. Harry Rickenbacker, a duly licensed dentist, testified as an expert witness for Dr. Little. Dr. Rickenbacker's opinion that Dr. Little had not violated any standards of care was based on the fact that he had "no idea what that patient asked for," such as whether or not she wanted him to try to save her teeth. Yet, even he recognized that several of Ms. Rommel's teeth could have been saved if properly treated.

The argument presented before us by Dr. Little is that there is no basis in the record for the Board's findings and conclusions of law, that since Dr. Rickenbacker was the only expert to testify concerning the treatment of Ms. Rommel by Dr. Little, the findings by the Board are unsupported by any evidence and must be reversed. We disagree. Dr. Michael J. Noonan, a dentist in Wilmington, the same area of practice of Dr. Little, testified before the Board that Ms. Rommel had slight to moderate periodontal disease and that extraction of only four teeth was indicated. In his opinion, [Dr. Noonan had treated Ms. Rommel after Dr. Little had pulled her teeth and delivered dentures] the advice and actions taken by Dr. Little with this patient was "not a good way to do it." It was not in accordance with good and accepted practice in North Carolina and particularly the community of Wilmington to advise her that all her teeth should be extracted and not to inform her that some teeth could be saved. Further, since Mrs. Rommel's X rays were received in evidence, there did exist substantial evidence that her periodontal disease was moderate and that removal of all her teeth was not indicated.

We hold that the testimony of Dr. Noonan was sufficient to constitute independent opinion evidence from an expert witness taken with all the other evidence to justify the Board, as judge of the credibility of the witness, to find that Dr. Little was negligent in his care and treatment of his patient, Ms. Rommel. In addition,

the Board of Dental Examiners, being composed of licensed dental professionals, was qualified within itself to judge whether Dr. Little met the standard of proficiency of due care of a licensed dentist practicing in the Wilmington area. It is within the province of the Board as an administrative agency to apply its own expertise in its conduct and evaluation of a disciplinary hearing. In the process of accepting or rejecting expert testimony the law does not require the Board to identify its method of reasoning or its method of determining credibility. *See In re Hawkins*, 17 N.C. App. 378, 194 S.E. 2d 540, *cert. denied*, 283 N.C. 393, 196 S.E. 2d 275, *cert. denied*, 414 U.S. 1001, 94 S.Ct. 355, 38 L.Ed. 2d 237 (1973); *Jaffe v. Department of Health*, 135 Conn. 339, 64 A. 2d 330 (1949).

We have reviewed all of the appellant's assignments of error and find each of them to be without merit. The Board's final decision is supported by substantial and material evidence on the whole record as submitted, and therefore the decision was not arbitrary or capricious. The decision of the North Carolina Board of Dental Examiners is

Affirmed.

Judges ARNOLD and WEBB concur.