DR. GLENN E. WOODLIEF, D.D.S. v. NORTH CAROLINA STATE BOARD OF
DENTAL EXAMINERS

No. 909SC1126

(Filed 3 September 1991)

1. **Physicians, Surgeons, and Allied Professions § 6.2 (NCI3d) — dental license hearing — expert testimony — information from dental assistants and records as basis**

   The State Board of Dental Examiners did not err in permitting a clinical dentist at a state mental hospital to give expert testimony based on her personal observations of petitioner's treatment of his patients and her own follow-up examinations of petitioner's patients. Furthermore, it was within the Board's discretion to permit this witness to state her own "findings" based on talking to dental assistants and on the notes and reports of petitioner and other doctors where the patients were clients at a state mental hospital who were unable to testify because of their mental condition. N.C.G.S. § 140B-41(a).

   **Am Jur 2d, Physicians, Surgeons, and Other Healers § 113.**

   **Necessity of expert evidence in proceeding for revocation or suspension of license of physician, surgeon, or dentist. 74 ALR4th 969.**

2. **Physicians, Surgeons, and Allied Professions § 5 (NCI3d) — dentist practicing in state mental hospital — standard of care**

   The State Board of Dental Examiners did not err in finding that a general dentist practicing in a state mental institution was subject to the same standard of care applicable to general dentists treating private patients.

   **Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 218, 267.**

3. **Physicians, Surgeons, and Allied Professions § 6.2 (NCI3d) — suspension of dental license — negligence and malpractice — sufficiency of evidence**

   A decision by the State Board of Dental Examiners suspending petitioner's license to practice dentistry for two years based on its findings and conclusions that petitioner's actions in the treatment of ten patients constituted negligence in the

practice of dentistry in violation of N.C.G.S. § 90-41(a)(12) and his actions in the treatment of twelve patients constituted malpractice in violation of N.C.G.S. § 90-41(a)(19) was supported by substantial competent evidence and was not arbitrary or capricious.

**Am Jur 2d, Physicians, Surgeons, and Other Healers § 96.**

APPEAL by petitioner from judgment entered 20 June 1990 by *Judge Robert H. Hobgood* in VANCE County Superior Court. Heard in the Court of Appeals 14 May 1991.

This is a civil case in which Dr. Glenn E. Woodlief (Dr. Woodlief) seeks appellate review of the trial court's judgment affirming the final agency decision of the North Carolina State Board of Dental Examiners (the Board). Based upon its findings and conclusions that Dr. Woodlief committed acts constituting negligence and malpractice, the Board suspended Dr. Woodlief's license to practice dentistry for two years. The trial court affirmed the Board's decision and we affirm the trial court's judgment.

Dr. Woodlief served as the Director of Dental Services at John Umstead Hospital, a regional state mental institution in Butner. The hospital operates under the auspices of the Division of Mental Health, Mental Retardation and Substance Abuse Services of the Department of Human Resources and serves both long-term and short-term patients in need of full-time inpatient mental health services. Dr. Sue Minneman, a licensed dentist at the hospital's dental clinic working under the direction of Dr. Woodlief, filed a complaint with Larry C. Jones, the patient advocate at the hospital, concerning Dr. Woodlief's treatment of patients. The complaint alleged *inter alia* that Dr. Woodlief had used wrist and ankle restraints to subject unwilling patients to "aggressive dental behavior" and unnecessary treatment. On 9 March 1988, Jones sent the Board a memorandum, alleging that Dr. Woodlief was "causing unnecessary pain and suffering to patients under his care and that in some cases has caused disfigurement and irreparable damage." Jones included with this memorandum a list of persons who could be interviewed concerning these allegations and hand-written notes regarding Dr. Woodlief's treatment of patients. The Board had an investigator conduct interviews, take affidavits, and examine medical records. The Board conducted a five day hearing on 10-11 February and 7-9 April 1989.

Based on the evidence and testimony presented at the hearing, the Board, in its findings of fact, found that the following actions by Dr. Woodlief constituted violations of the standard of care: using sedation and mechanical restraints to force a legally competent but unwilling patient "to undergo an elective procedure, prophylaxis with a cavitron . . . resulting in the mutilation of tissue in [the patient's] oral cavity"; performing an elective dental procedure by restraining a patient "so fragile that she has suffered broken bones by being moved from her bed to a chair [and] is fed through a nasal gastric tube" by the wrists, legs, and feet without first advising the patient's treating physician as previously requested, risking "possibly severe" injury to the patient, "including aspiration pneumonia, fractures, or laceration of skin and mucus membranes"; utilizing "unpadded tongue blades to pry and wedge [an uncooperative patient's] teeth apart," resulting in splinters which lacerated the oral tissues; utilizing forceps without sedation in an attempt to pry a patient's mouth open for the extraction of one tooth when he could have referred the patient to an oral surgeon to have the extraction performed under general anesthesia, causing three additional teeth "to break, necessitating their extraction"; proceeding to perform several "elective dental procedures" on a patient after ignoring an assistant's warning that the patient "had soiled himself" and refusing to allow the patient to be cleaned; failing to request the presence of a sign language interpreter while performing a "relining" of a deaf mute patient's dentures and failing "to communicate to [the patient] that the hard reline material would become hot in his mouth and that he should signal [Dr. Woodlief] when the heat became painful," thus causing "unnecessary pain and suffering" when Dr. Woodlief left "the relined dentures in [the patient's] mouth after the point when the hard reline material had become hot"; "forcing elective dental prophylaxis [with a cavitron] on [five] elderly, frail patients" by placing them "below 30 degrees above the horizontal" and using mechanical wrist restraints; and failing to recognize and properly diagnose a "large cystic lesion" which resulted in a patient's "loss of facial bone."

Accordingly, the Board, in its conclusions of law, stated that Dr. Woodlief's actions in the treatment of ten patients constituted negligence in the practice of dentistry in violation of G.S. 90-41(a)(12) and his actions in the treatment of twelve patients constituted malpractice in the practice of dentistry, in violation of G.S. 90-41(a)(19).

WOODLIEF v. N.C. STATE BD. OF DENTAL EXAMINERS

[104 N.C. App. 52 (1991)]

*Perry, Kittrell, Blackburn & Blackburn, by George T. Blackburn, II, for petitioner-appellant.*

*Bailey & Dixon, by Alan J. Miles, for respondent-appellee.*

*Moore & Van Allen, by Dean M. Harris, for the Academy of Dentistry for the Handicapped, amicus curiae.*

EAGLES, Judge.

Dr. Woodlief brings forward eleven questions for review from his assignments of error. The first eight questions address the issue of whether the findings of fact and conclusions of law of the Board, affirmed by the trial judge, are supported by substantial evidence in view of the whole record as submitted. The other three assignments of error address the issue of whether the Board applied the correct standard of care. All twelve questions challenge the Board's actions as being arbitrary and capricious. After careful review of the record, we disagree and affirm the trial court's judgment.

Judicial review of the decisions of administrative agencies is governed by the whole record test pursuant to General Statutes Chapter 150B, the Administrative Procedure Act. Upon reviewing an agency's decision, a trial court may "reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are . . . (5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or (6) Arbitrary or capricious." G.S. 150B-51(b). The whole record test "properly takes into account the specialized expertise of the staff of an administrative agency. . . ." *High Rock Lake Assoc. v. Environmental Management Comm'n*, 51 N.C. App. 275, 279, 276 S.E.2d 472, 475 (1981). Accordingly, the whole record test requires that

> "[i]f, after all of the record has been reviewed, substantial competent evidence is found which would support the agency ruling, the ruling must stand." In this context substantial evidence has been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Therefore, in reaching its decision, the reviewing court is prohibited from replacing the Agency's findings of fact with its own judgment of how credible, or incredible, the testimony

appears to them to be, so long as substantial evidence of those findings exist in the whole record.

*Little v. Board of Dental Examiners*, 64 N.C. App. 67, 69, 306 S.E.2d 534, 536 (1983) (citations omitted). Additionally, the whole record test does not allow the trial court "to replace the agency's judgment when there are two reasonably conflicting views, although the court could have reached a different decision had the matter been before it *de novo.*" *White v. N.C. State Board of Examiners of Practicing Psychologists*, 97 N.C. App. 144, 153-54, 388 S.E.2d 148, 154, *appeal dismissed and disc. rev. denied*, 326 N.C. 601, 393 S.E.2d 891 (1990).

[1]   Dr. Woodlief contends that "the testimony of Dr. Minneman should be excluded as incompetent" and that the trial court erred in concluding that the Board's decision was supported by substantial competent evidence. G.S. 150B-41(a) states that "the rules of evidence as applied in the trial division of the General Court of Justice shall be followed . . ." G.S. 8C-1, Rule 702 provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." Our Supreme Court has stated that "[i]t is not necessary that an expert be experienced with the identical subject area in a particular case or that the expert be a specialist, licensed, or even engaged in a specific profession." *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984).

Here, Dr. Minneman was a licensed dentist. When tendered as a witness at the hearing, she testified that she was a 1985 graduate of the University of North Carolina School of Dentistry. She received her license on 20 May 1985. She stated that she commenced her practice as a clinical dentist at Umstead on 1 August 1985. She also testified that for seven years prior to becoming a dentist, she had worked as a dental assistant in a private practice and at the Wake County Health Department. The Board decided that she was appropriately qualified to testify as an expert in the practice of dentistry. Once the Board made the determination that Dr. Minneman was appropriately qualified as an expert, she was allowed to testify as to her observations and opinion. G.S. 8C-1, Rule 702. Much of her testimony was based on personally observing Dr. Woodlief treat his patients and on her own perform-

ance of follow-up examinations on many of Dr. Woodlief's patients. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing." G.S. 8C-1, Rule 703. Dr. Minneman also testified as to the same standard of care that the Board later used in its findings of fact (see discussion *infra*).

Dr. Woodlief contends that the Board erred by admitting into evidence Dr. Minneman's statements which were based on "her own 'findings' from talking to dental assistants" in "unsworn interviews" and on the notes and reports of Dr. Woodlief and other doctors. We conclude that no prejudicial error occurred. G.S. 8C-1, Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

*See State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). Initially, we note that the hearing here differed from other licensing hearings conducted by the Board where patients have provided testimony regarding a dentist's actions. Here, the patients were clients at Umstead Hospital who were unable to testify because of their mental conditions. Given these circumstances, it was within the Board's discretion to allow the admission of Dr. Minneman's statements. G.S. 150B-41(a) further provides that "when evidence is not reasonably available under such rules to show relevant facts, they may be shown by the most reliable and substantial evidence available." The Board admitted Dr. Minneman's statements and noted that in doing so it was attempting "to get as much information as possible" under the circumstances. Furthermore, in addition to Dr. Minneman's testimony, the Board heard the sworn testimony of the clinic's two dental assistants, whose statements were consistent with Dr. Minneman's testimony. Another dentist, Dr. William P. Webster, also testified against Dr. Woodlief. In an administrative proceeding,

> it is the prerogative and duty of that administrative body, once all the evidence has been presented and considered, "to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts,

and to appraise conflicting and circumstantial evidence. The credibility of witnesses and the probative value of particular testimony are for the administrative body to determine, and it may accept or reject in whole or part the testimony of any witness."

* * *

It is within the province of the Board as an administrative agency to apply its own expertise in its conduct and evaluation of a disciplinary hearing. In the process of accepting or rejecting expert testimony the law does not require the Board to identify its method of reasoning or its method of determining credibility.

*Little v. Board of Dental Examiners*, 64 N.C. App. at 68-69, 75, 306 S.E.2d at 536, 539 (citations omitted). Under G.S. 150B-41(a), we conclude that no prejudicial error occurred in the trial court's affirming the Board's admission of Dr. Minneman's statements.

Upon review of the whole record, though there is some evidence supporting a contrary conclusion, we hold that the trial court properly concluded that there is substantial competent evidence to support the Board's findings. Dr. Woodlief's first eight assignments of error are without merit and the trial court's conclusion that the Board's findings must stand is affirmed.

[2] Dr. Woodlief further contends that the trial court erred by affirming the Board's finding that "[t]here is one standard of care for general dentists practicing in North Carolina. General dentists practicing in an institutional setting are required to render professional services to their patients in accordance with the same standard of care applicable to general dentists in a private practice setting." Dr. Woodlief argues that the Board should have used a different standard of care because he was practicing in an institution which is operated by the Department of Human Resources under G.S. 122C-181(a)(1)(c). We disagree.

When construing a statute, "we are guided by the primary rule of construction that the intent of the legislature controls. *In re Hardy*, 294 N.C. 90, 240 S.E.2d 367 (1978). . . . We must avoid a construction which will defeat or impair the object of a statute, and should give the statute a construction which, when practically applied, will tend to suppress the evil which the legislature sought to avoid." *N.C. Board of Examiners for Speech and Language*

*Pathologists and Audiologists v. N.C. State Board of Education,*
77 N.C. App. 159, 161, 334 S.E.2d 503, 505 (1985) (affirming Board
of Examiner's narrow interpretation of statute disallowing exemp-
tion sought by employees of local school boards who were certified
by State Board of Education and Department of Public Instruction).
Concerning the practice of dentistry, the intent of the General
Assembly and the evil sought to be avoided are stated in G.S. 90-22:

> The practice of dentistry in the State of North Carolina is
> hereby declared to affect the public health, safety and welfare
> and to be subject to regulation and control in the public in-
> terest. It is further declared to be a matter of public interest
> and concern that the dental profession merit and receive the
> confidence of the public and that only qualified persons be
> permitted to practice dentistry in the State of North Carolina.
> This Article shall be liberally construed to carry out these
> objects and purposes.

G.S. 90-29 provides that "[n]o person shall engage in the practice
of dentistry in this State, or offer or attempt to do so, unless
such person is the holder of a valid license or certificate of renewal
of license duly issued by the North Carolina State Board of Dental
Examiners." Dr. Woodlief received his dentist's license on 21 July
1975.

As a licensed dentist practicing dentistry in North Carolina,
Dr. Woodlief was bound to follow the rules and regulations pro-
mulgated by the Board. G.S. 90-28, 90-41. The Board was the only
appropriate body to determine the standard of care necessary in
the dental treatment of the patients at Umstead Hospital. The
Board correctly decided to use a single standard of care and the
trial court correctly affirmed that decision. Our Supreme Court
has stated:

> The Dental Practice Act [G.S. Chapter 90, Article 2] is
> silent as to the standard of practice by which a dentist's
> negligence or incompetence is to be measured. In considering
> the regulatory, licensing and disciplinary functions of the North
> Carolina State Board of Dental Examiners, we hold that a
> statewide standard must be applied. That is, prior to invoking
> disciplinary measures as authorized under G.S. 90-41(a), the
> Board must first be satisfied that the care provided by the
> licensee was not in accordance with the standards of practice

among members of the dentistry profession situated throughout the State of North Carolina at the time of the alleged violation.

The North Carolina State Board of Dental Examiners, like all other professional licensing boards, was created to establish and enforce a uniform statewide minimum level of competency among its licensees. Applicants are required to meet a minimum statewide standard prior to being granted a license, G.S. 90-30; and licensees are required, irrespective of location in the State, to comply with the rules and regulations promulgated by the Board. Likewise, we believe that the decision of whether an applicant or licensee has violated *any* of the factors enumerated in G.S. 90-41 authorizing disciplinary action must also be viewed in the context of a uniform statewide standard.

*In re Dailey v. Board of Dental Examiners*, 309 N.C. 710, 722-23, 309 S.E.2d 219, 226-27 (1983) (footnote omitted) (emphasis in original). As a licensed dentist employed at a state mental hospital, Dr. Woodlief was bound to follow both the rules and regulations of the Department of Human Resources, which regulate employees at those institutions, and the rules and regulations of the Board of Dental Examiners, which regulates the practice of *all* dentists practicing in North Carolina. There is no provision in our statutes which exempts dentists working for state hospitals or agencies from the licensing requirements or from mandatory compliance with the rules and regulations promulgated by the Board of Dental Examiners.

[3]  Dr. Woodlief contends that the Board's findings and ultimate suspension of his license for a period of two years are arbitrary and capricious. We disagree. This Court has stated that

[t]he "arbitrary or capricious" standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are "patently in bad faith" or "whimsical" in the sense that "they indicate a lack of fair and careful consideration" or "fail to indicate 'any course of reasoning and the exercise of judgment'. . . ."

*Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989) (citations omitted). We find nothing in the record to indicate that the Board acted in such a manner. From its investigation and hearings, the Board made detailed find-

ings concerning Dr. Woodlief's treatment of twelve different patients. After making the necessary findings, the Board was clearly acting within its statutory authority when it suspended Dr. Woodlief's license. G.S. 90-41(a)(3). The Board's final decision was supported by substantial competent evidence on the whole record as submitted. Accordingly, we find the Board's suspension of Dr. Woodlief's license was neither arbitrary nor capricious.

We have carefully reviewed Dr. Woodlief's assignments of error and find each of them to be without merit. The judgment of the trial court below is affirmed.

Affirmed.

Judges GREENE and LEWIS concur.