■ In the Matter of ANTONY REDDY, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [686 NYS2d 520] —Graffeo, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent which revoked petitioner's license to practice medicine in New York.

On June 27, 1997, the Bureau of Professional Medical Conduct filed 10 specifications of professional misconduct against petitioner, a licensed physician and board-certified urologist, including allegations of willfully abusing a patient, moral unfitness, fraudulent practice, gross negligence, negligence on more than one occasion and failure to keep accurate records.

The charges stemmed from alleged sexual improprieties and medical treatment of two women (hereinafter patients A and B, respectively), both of whom were employees at petitioner's office. Following a lengthy hearing, a Hearing Committee of respondent voted to revoke petitioner's license. Thereafter, petitioner commenced this CPLR article 78 proceeding to annul the Hearing Committee's determination and the revocation of his license was stayed pending this appeal.

The Hearing Committee's determination was based on findings that petitioner manifested moral unfitness, committed willful abuse of patient A, was negligent, and failed to keep medical records for both patients. Initially, the Hearing Committee found both women were patients, despite their status as employees, based on the periodic gynecological exams conducted by petitioner. In July 1983 patient A was a temporary secretary in petitioner's office and thereafter, she was hired by petitioner and remained in his employ from November 1983 to June 1996. Patient A testified that she had no prior sexual experience and never had a gynecological examination before her employment with petitioner. During her first gynecological examination, patient A claimed petitioner rubbed her clitoris and exposed his genitals to her. At a second examination, patient A alleged that petitioner cut her hymen. She further testified that at her next examination, after checking her incision, petitioner inserted his penis in her vagina without her consent. In contrast to patient A's version of the facts, petitioner asserts that he did not undertake gynecological examinations of patient A until 1985, after their consensual sexual relationship was established. He also denied performing any procedure on her hymen.

The Hearing Committee ascertained that petitioner inappropriately touched patient A's genitalia and exposed himself during patient A's initial gynecological examination in the autumn of 1983 when patient A was 19 years old. Although the sexual relationship between petitioner and patient A, spanning several years, was determined by the Hearing Committee to be consensual, the initial sexual act was deemed coercive. Petitioner was further adjudged to have acted negligently by injecting patient A with valium and leaving her unattended on the floor of his office, and by performing an unnecessary hymenotomy on her. Petitioner also admittedly failed to adequately maintain medical records for patients A and B. Other than the failure to maintain proper records, no other findings were made by the Hearing Committee with regard to patient B.

Petitioner first contends that the proceeding was barred by laches. Although approximately 13½ years transpired between the date of the commencement of the alleged misconduct and the initiation of the disciplinary proceeding, the doctrine of laches does not apply to physician disciplinary proceedings (*see, Matter of Wolf v Ambach*, 95 AD2d 877; *Matter of Chaplan v Ambach*, 91 AD2d 736). Moreover, petitioner has failed to demonstrate that the delay caused him actual prejudice (*see, Matter of Lawrence v DeBuono*, 251 AD2d 700, 701; *Matter of*

*Monti v Chassin*, 237 AD2d 738, 740; *Matter of Hubsher v De Buono*, 232 AD2d 764, 765, *lv denied* 89 NY2d 810). Based on a review of the record, proof of the alleged misconduct was primarily based upon the testimony of the complaining witnesses and petitioner, who recalled details of the events with clarity (*see, Matter of Rojas v Sobol*, 167 AD2d 707, 708, *lv denied* 77 NY2d 806), and there is no indication that the delay thwarted petitioner's ability to mount a defense against the charges (*cf., Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169, 180, *cert denied* 476 US 1115).

Petitioner also claims that the Hearing Committee's determination to sustain the charges of sexual misconduct and negligence was arbitrary and capricious. Our inquiry in this regard is limited to ascertaining whether the determination was supported by substantial evidence (*see, Matter of Franco v State Bd. for Professional Med. Conduct*, 240 AD2d 869; *Matter of Adler v Bureau of Professional Med. Conduct, State of N. Y., Dept. of Health*, 211 AD2d 990; *Matter of Rudell v Commissioner of Health of State of N. Y.*, 194 AD2d 48, 50, *lv denied* 83 NY2d 754). It is clear from our review of the record that petitioner conducted several examinations of patient A, including annual gynecological examinations, which supports the Hearing Committee's specific finding that patient A was petitioner's medical patient. Petitioner contends that his sexual relationship with his "office manager" for several years was a consensual affair and, therefore, his conduct did not justify a finding of moral unfitness to practice medicine. We disagree. The record contains detailed testimony from patient A indicating that during her first gynecological examination, petitioner inappropriately rubbed her genitalia and exposed his penis to her. During another examination, she described how petitioner forcibly had intercourse with her. Hence, the basis for the Hearing Committee's determination was petitioner's egregious professional conduct, including coercive sex, in the course of performing gynecological examinations of patient A and not the fact that petitioner engaged in an affair with his employee.

Patient A also testified that petitioner performed a procedure wherein he cut her hymen, which a Board expert witness opined was not medically indicated at the time it was performed, and injected her with valium on approximately 20 occasions prior to sexual relations. Although petitioner gave a substantially different account of these events, and denied performing a hymenotomy, conflicting evidence and issues of credibility are within the exclusive province of the Hearing Committee (*see, Matter of Morrison v DeBuono*, 255 AD2d 710;

*Matter of Brown v New York State Dept. of Health*, 235 AD2d 957, 958, *lv denied* 89 NY2d 814; *Matter of Sung Ho Kim v Board of Regents*, 172 AD2d 880, 881, *lv denied* 78 NY2d 856). While the Hearing Committee concluded that hospital documentary evidence did not support patient A's recollection regarding the taking of a pap smear during her first gynecological examination, it does not necessarily follow that the remainder of her testimony was not credible. Indeed, an administrative fact finder may properly credit one portion of a witness's testimony and, at the same time, reject another (*see, Matter of 119-121 E. 97th St. Corp. v New York City Commn. on Human Rights*, 220 AD2d 79, 83). With regard to the charges of inadequate recordkeeping, the record clearly demonstrated that petitioner did not keep any records in connection with his treatment of patient A or patient B, and that such failure affected the care of the patients and constituted negligence. Based on the foregoing, substantial evidence existed to support the Hearing Committee's findings.

We further find petitioner's claim that the sanction of revocation of his license to practice medicine was excessive to be unavailing. A penalty imposed by an administrative agency will not be overturned unless it is found to be "so disproportionate to the underlying offenses as to be shocking to one's sense of fairness" (*Matter of Hoffman v Village of Sidney*, 252 AD2d 844, 845; *see, Matter of Rivera v Goord*, 248 AD2d 902). License revocation based on improper sexual contact with a patient is not an excessive sanction (*see, e.g., Matter of Morrison v De-Buono, supra; Matter of Finelli v Chassin*, 206 AD2d 717, 719; *Matter of Rudell v Commissioner of Health of State of N. Y., supra*, at 52), especially where it is coupled with the finding of negligence and improper recordkeeping.

Petitioner's remaining contentions have been considered and found to be lacking in merit.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.