RICHARD D. SIBLEY, Petitioner-Appellant v. THE NORTH CAROLINA BOARD OF THERAPY EXAMINERS, Respondent-Appellee

No. COA01-471

(Filed 16 July 2002)

### 1. Laches— administrative hearing—no prejudice

The trial court did not err by denying petitioner's motion to dismiss for laches a disciplinary proceeding which led to suspension of petitioner's license to practice physical therapy where the charges were based on events which occurred in 1990 and 1991 but petitioner did not receive notice from the Board of any complaint until 1996 and did not receive notice of a hearing until August of 1998. Petitioner did not show prejudice resulting from the delay.

### 2. Constitutional Law— vagueness—physical therapy licensing statutes

Statutory language concerning disciplinary action against physical therapists is not unconstitutionally vague and is sufficiently specific to provide the Board of Physical Therapy Examiners with the authority to determine that petitioner violated acceptable standards of practice by having a sexual relationship with a patient.

### 3. Administrative Law— physical therapy—professional standards—personal knowledge of board members

The trial court did not err by allowing the members of the Board of Physical Therapy Examiners to determine from their own knowledge as physical therapists that petitioner knew or should have known that having a sexual relationship with a patient would violate statutory standards. There was evidence in the record on which the Board could base its decision.

### 4. Administrative Law— physical therapist—sexual relationship with patient—no specific standard prohibiting

The trial court did not err by upholding a decision of the Board of Physical Therapy Examiners to suspend petitioner's license for having a sexual relationship with a patient even though petitioner contended that the evidence failed to establish the appropriate standards of practice for the time when the relationship occurred. The Board's findings that petitioner knew or should have known that his actions were wrong is sup-

ported by testimony from an expert witness and petitioner's own acknowledgment.

**5. Physical Therapy— sexual contact with patient— consensual**

There was substantial evidence in a disciplinary proceeding against a physical therapist that the therapist knew or should have known that a consensual sexual relationship with a patient was prohibited, even outside the confines of his office.

**6. Physical Therapy— penalty for sexual contact with patient—not excessive**

The Board of Therapy Examiners did not act arbitrarily or capriciously in suspending the license of a physical therapist who had sex with a patient where there was no indication that the Board acted in bad faith, unfairly, or without judgment.

Judge GREENE dissenting.

Appeal by petitioner from an order dated 17 November 2000 by Judge Ronald K. Payne in Superior Court, Buncombe County. Heard in the Court of Appeals 12 February 2002.

*Hyler and Lopez, P.A., by George B. Hyler, Jr. and Robert J. Lopez, for petitioner-appellant.*

*Satisky & Silverstein, L.L.P., by John M. Silverstein, for respondent-appellee.*

McGEE, Judge.

The North Carolina Board of Physical Therapy Examiners (Board) issued a Notice of Hearing to Richard D. Sibley (petitioner) on 4 December 1998. This notice alleged violations of provisions of the North Carolina Physical Therapy Act. The Board held a contested case hearing concerning these allegations on 14 January 1999 and 15 January 1999.

Evidence presented at the hearing tended to show that Jan Taibi (Taibi) became a physical therapy patient of petitioner on 28 August 1990. She testified she initially saw petitioner twice a week, then one to two times per week, and then about every other week. On two occasions Taibi told petitioner she had feelings for him; petitioner thanked her, but he wanted to work through the feelings and remain professional. The next time Taibi expressed to petitioner her feelings

for him, on 8 May 1991, she asked if he would kiss her. Petitioner kissed Taibi. She told him she wanted to make love to him, and he turned away and continued with the therapy session. Petitioner went to Taibi's apartment to return some videos on 11 May 1991. The two hugged, began kissing, and had sexual relations. Taibi testified she and petitioner had sexual relations six more times. Taibi saw petitioner again on 7 June 1991, and one final time on 25 June 1991. Their relationship ended when Taibi told petitioner she was pregnant.

Boo Bouchard (Bouchard) testified she also received treatment from petitioner. Bouchard saw petitioner six or seven times from 15 March 1990 until approximately 20 June 1990 or 2 July 1990. After Bouchard's second session with petitioner, on 2 April 1990, petitioner and Bouchard talked for a long time after the session. During the third session, Bouchard testified she began to have unusual feelings. They again talked for a long time about personal matters, and the session ended with a full body hug that lasted five or six seconds. The same full body hug followed the next session. Bouchard testified that after a session in early June, the two left the office together. Petitioner kissed Bouchard on the lips. Bouchard had one more treatment session with petitioner where nothing unusual occurred.

Petitioner testified that he and Taibi mutually terminated Taibi's treatment following her 8 May 1991 visit. He and Taibi then had sexual relations on approximately four occasions over a short time. Petitioner testified that when Taibi returned for treatment on 7 June 1991, the two had already mutually terminated their sexual relationship. Petitioner denied ever leaving his office with Bouchard and testified that he never kissed her on her mouth. Following the hearing, the Board issued a decision and order in which they suspended petitioner's license to practice physical therapy for three years, nine months of which were active suspension. Petitioner filed a petition for judicial review in Superior Court in Buncombe County on 4 February 1999. The trial court remanded the case to the Board in order to determine if petitioner knew or should have known whether his behavior constituted grounds for disciplinary action. The Board issued a decision and order dated 19 November 1999, in which it determined petitioner knew or should have known his actions were subject to discipline. Petitioner again filed for a judicial review. The trial court heard the matter on 17 October 2000 through 20 October 2000. The trial court issued an order affirming the decision and order of the Board on remand dated 17 November 2000. Petitioner appeals from this order.

I.

**[1]** Petitioner first argues the trial court erred in denying petitioner's motion to dismiss on the basis of laches. Petitioner states the charges brought were based on events which occurred in 1990 and 1991, yet petitioner did not receive any notification from the Board of any complaint until August 1996, and he did not receive notice of a hearing until August 1998. Petitioner contends this delay irreparably prejudiced him because he was not allowed to investigate Taibi's allegations closer in time to the alleged conduct, that his own recollection of any alleged events was diminished, and that he was not given an opportunity to record his contemporaneous statements to defend this action. We disagree.

We note there is no North Carolina case where the defense of laches has been applied to an administrative hearing concerning the revocation of a professional license. Petitioner urges us to adopt the reasoning of *Appeal of Plantier*, 494 A.2d 270 (1985), in which the New Hampshire Supreme Court dismissed a complaint where a nine and a half year delay existed between the alleged misconduct and the filing of the complaint. In *Plantier*, the court stated the case was a

> classic case in which the disposition turns on the credibility of the witnesses' testimony. . . . Because the resolution turns on the credibility of testimonial evidence, the failure to impose a limitation on the time in which such a disciplinary proceeding may be brought would significantly increase the problems of proof and would increase the danger of false, fraudulent, frivolous, speculative or uncertain claims.

*Id.*, 494 A.2d at 274. The court concluded the physician had demonstrated his due process rights were violated by the delay. *Id.*, 494 A.2d at 275.

However, in the case before us we do not conclude petitioner's due process rights were violated. Petitioner points to no specific instance where the delay resulted in prejudice to his case. Furthermore, Taibi filed a lawsuit against petitioner in 1993. Although Taibi eventually withdrew her complaint, petitioner verified answers to interrogatories; consequently, he was aware of the specifics of the allegations in the Board's notice of hearing. The record before us does not reveal that any of the witnesses had problems recollecting the events which transpired, nor has petitioner shown that any witness is now unavailable, nor has petitioner shown difficulty in remembering

the events.

We believe the case is more analogous to *Reddy v. State Bd. for Prof. Med. Conduct*, 686 N.Y.S.2d 520 (1999). In *Reddy*, the court held a physician failed to demonstrate any prejudice by a thirteen year delay. All witnesses were able to recall the events and the physician's ability to contest the charges was not impaired. *Id.*, 681 N.Y.S.2d at 522. We choose to adopt the holding of *Reddy* and *Giffone v. De Buono*, 693 N.Y.S.2d 691 (1999). In *Giffone*, the court held that with "respect to the time delay between the charged incidents of misconduct and the ensuing disciplinary proceeding, petitioner must demonstrate that any delay in bringing the charges caused him actual prejudice." *Giffone*, 693 N.Y.S.2d at 693. In the case before us, petitioner has failed to show any prejudice resulting from the delay. As a result, we dismiss this assignment of error.

II.

[2] Petitioner next argues the trial court erred in affirming the order of the Board because the statutes under which petitioner was charged are unconstitutionally vague. We disagree.

Petitioner contends N.C. Gen. Stat. § 90-270.36(7) and N.C. Gen. Stat. § 90-270.36(9) are unconstitutionally vague. These statutes state:

Grounds for disciplinary action shall include but not be limited to the following:

. . .

(7) The commission of an act or acts of malpractice, gross negligence or incompetence in the practice of physical therapy;

. . .

(9) Engaging in conduct that could result in harm or injury to the public.

N.C. Gen. Stat. §§ 90-270.36(7),(9) (1999). The test used to determine whether a statute which sets out standards of professional conduct is unconstitutionally vague is "whether a reasonably intelligent member of the profession would understand that the conduct in question is forbidden." *In re Wilkins*, 294 N.C. 528, 548, 242 S.E.2d 829, 840-41 (1978), *overruled on other grounds* by *In re Guess*, 324 N.C. 105, 376 S.E.2d 8 (1989). *See also White v. N.C. Bd. of Examiners of*

*Practicing Psychologists*, 97 N.C. App. 144, 388 S.E.2d 148, *disc. review denied*, 326 N.C. 601, 393 S.E.2d 891 (1990). In the case before us, petitioner had a sexual relationship with one of his patients. It is not inconceivable that such a practice "could result in harm or injury to the public." N.C.G.S. § 90-270.36(9). Our Supreme Court has held that there "is no requirement, however, that every action taken by the Board specifically identify or address a particular injury or danger to any individual or to the public." *In Re Guess*, 327 N.C. 46, 54, 393 S.E.2d 833, 838 (1990), *cert. denied*, 498 U.S. 1047, 112 L. Ed. 2d. 774 (1991). The *Guess* Court concluded the "statutory phrase 'standards of acceptable and prevailing medical practice' is sufficiently specific to provide the Board—comprised overwhelmingly of expert physicians—with the 'adequate guiding standards' necessary to support the legislature's delegation of authority." *Guess*, 327 N.C. at 54, 393 S.E.2d at 837-38 (quoting N.C. Gen. Stat. § 90-14(a)(6) (1985). Likewise, in the case before us, we conclude the language of N.C.G.S. § 90-270.36(7) and N.C.G.S. § 90-270.36(9) is not unconstitutionally vague and is sufficiently specific to provide the Board with the authority to determine that petitioner's actions violated acceptable standards of practice in the physical therapy field. We overrule this assignment of error.

III.

[3] Petitioner next argues the trial court erred in allowing the members of the physical therapy board to determine from their own knowledge as physical therapists that the petitioner knew or should have known that his actions were in violation of N.C.G.S. § 90-270.36(7) and N.C.G.S. § 90-270.36(9).

Petitioner relies on *In re Dailey v. Board of Dental Examiners*, 309 N.C. 710, 309 S.E.2d 219 (1983), for his argument that a licensing board may not substitute its own expertise for that of expert witnesses. In *Dailey*, our Supreme Court stated there must be a record preserved in order to have proper judicial review. *Id.*, 309 N.C. at 724, 309 S.E.2d at 227.

However, petitioner ignores the decision in *Leahy v. N.C. Bd. of Nursing*, 346 N.C. 775, 488 S.E.2d 245 (1997), which distinguished and restricted the holding in *Dailey*. In *Leahy*, our Supreme Court explained the

> concern in *Dailey* was that the board would use its own expertise to decide the case without any evidence to support it. That is not

the case here. There is evidence in the record which the Board could use its expertise to interpret, including its expertise as to whether the petitioner had violated the standard of care for registered nurses. From the record, we are able to determine the validity of the Board's action.

*Id.* at 780, 488 S.E.2d at 248. As in *Leahy,* in the case before us there is evidence in the record upon which the Board can base its decision; consequently, *Dailey* does not apply. We dismiss this assignment of error.

## IV.

[4] Petitioner argues the trial court erred by upholding the Board's decision because the record contained insufficient evidence to support a conclusion that petitioner had violated N.C.G.S. § 90-270.36(7) or N.C.G.S. § 90-270.36(9). Petitioner contends the evidence in the record failed to establish the appropriate standards of practice during 1990-1991, when the alleged incidents took place.

"Judicial review of the decisions of administrative agencies is governed by the whole record test[.]" *Woodlief v. N.C. State Bd. of Dental Examiners,* 104 N.C. App. 52, 55, 407 S.E.2d 596, 598 (1991). The whole record test requires that

" '[i]f, after all of the record has been reviewed, substantial competent evidence is found which would support the agency ruling, the ruling must stand.' In this context substantial evidence has been held to mean 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Therefore, in reaching its decision, the reviewing court is prohibited from replacing the Agency's findings of fact with its own judgment of how credible, or incredible, the testimony appears to them to be, so long as substantial evidence of those findings exist in the whole record."

*Id.* at 55-56, 407 S.E.2d at 598 (quoting *Little v. Board of Dental Examiners,* 64 N.C. App. 67, 69, 306 S.E.2d 534, 536 (1983) (citations omitted)).

In the case before us, the Board found as fact that

3. A physical attraction confuses the relationship between the patient and the therapist, particularly in cranial sacral therapy, which can induce a somato emotional release that requires a very

strong level of trust between the physical therapist and the patient.

4. [Petitioner] knew it would be wrong to take advantage of a patient during somato emotional release.

5. [Petitioner] knew that an attraction between himself and a patient would interfere with physical therapy treatment.

6. [Petitioner] knew in 1991 that it was not permissible for a licensed physical therapist to have a sexual relationship with a patient outside the office.

7. During his physical therapy education, [Petitioner] was taught not to have sex with a patient.

8. Licensees, including [Petitioner], should have known that it was a violation of the Physical Therapy Practice Act in 1991 to engage in full body hugs with a patient, kiss a patient on the lips or have sexual intercourse with a patient.

The Board then concluded, as a result of petitioner's actions in light of the findings of fact, that petitioner violated N.C.G.S. § 90-270.36(7) and N.C.G.S. § 90-270.36(9) with regard to his treatment of both Taibi and Bouchard. Petitioner argues the Board failed to identify and establish definitive and appropriate standards which existed in 1990 and 1991. Petitioner directs the Court to the lack of a definitive rule in the code of ethics for physical therapists specifically prohibiting sexual relations with a patient. However, a lack of definitive rules in the code of ethics alone does not excuse petitioner's behavior. The Board's findings of fact that petitioner knew or should have known that his actions were wrong is supported by testimony from an expert witness and petitioner's own acknowledgment that he knew he should not have a sexual relationship with a patient.

Furthermore, while petitioner testified he had ended his treatment with Taibi during the time when he had a sexual relationship with her, the evidence tends to show otherwise. Petitioner kissed Taibi in his office on 8 May 1991. After this visit, petitioner had sexual relations with Taibi at least five times before his last treatment of her on 25 June 1991. While petitioner testified he stopped treating Taibi on 8 May 1991, his records indicate that she was to return. Petitioner's notes regarding that day's visit contain the term "continue." The Board concluded that Taibi was still a patient of petitioner when the sexual relationship occurred. The whole record test does

not permit the reviewing court "to replace the agency's judgment when there are two reasonable conflicting views, although the court could have reached a different decision had the matter been before it *de novo.*" *White*, 97 N.C. App. at 153-54, 388 S.E.2d at 154, *disc. review denied*, 326 N.C. 601, 393 S.E.2d 891 (1990). After reviewing the whole record, we find sufficient evidence to support these findings.

## V.

[5] Petitioner next argues there was insufficient evidence in the record to support both the Board's and the trial court's findings of fact and conclusions of law. We disagree.

Petitioner argues that since the touching and sexual activity that occurred between Taibi and petitioner and the activity which occurred between Bouchard and petitioner was consensual, this type of activity was not prohibited. Petitioner contends there is no evidence in the record of any non-consensual touching or sexual activity; therefore, there is no substantial evidence to support any violation. However, as discussed above, under the whole record test, our review of the record reveals substantial evidence that petitioner knew or should have known consensual sexual relationship with a patient, even outside the confines of his office, was prohibited. We overrule this assignment of error.

## VI.

[6] Petitioner also argues the trial court erred in upholding the Board's decision because the disciplinary action imposed by the Board was excessively severe and therefore arbitrary and capricious in nature and in violation of N.C. Gen. Stat. § 150B-51(b)(6).

"The arbitrary and capricious standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are patently in bad faith or whimsical in the sense that they indicate a lack of fair and careful consideration or fail to indicate any course of reasoning and the exercise of judgment. . . ."

*Elliot v. N.C. Psychology Bd.*, 126 N.C. App. 453, 460, 485 S.E.2d 882, 886 (1997) (quoting *Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989) (citations omitted)). In *Elliot*, a psychologist's license was suspended for sixty months, with an active suspension of thirty days following a finding by the Board that he had a sexual relationship with two clients. Our Court deter-

mined this suspension was not arbitrary or capricious. In the case before us, petitioner was found to have had a sexual relationship with one patient and engaged in physical touching with another. Petitioner's license was suspended for three years with an active suspension of nine months. As in *Elliot*, we find "no indication in this case that the Board acted in bad faith, unfairly, or without judgment." *Elliot*, 126 N.C. App. at 460, 485 S.E.2d at 886. We overrule this assignment of error.

We affirm the order of the trial court.

Affirmed.

Judge THOMAS concurs.

Judge GREENE dissents with a separate opinion.

GREENE, Judge, dissenting.

As the Board's findings and the evidence presented are inadequate to support the conclusion that petitioner's conduct amounted to incompetence and could result in harm or injury to the public, I dissent.

The Board found petitioner, a physical therapist licensed in North Carolina, had engaged in sexual relations with one of his patients at a time when she was still his patient and had engaged in full-body hugs and kissed another patient on the lips during a treatment session. The Board further found that:

3. A physical attraction confuses the relationship between the patient and the therapist, particularly in cranial sacral therapy, which can induce a somato emotional release that requires a very strong level of trust between the physical therapist and the patient.

4. [Petitioner] knew it would be wrong to take advantage of a patient during somato emotional release.

5. [Petitioner] knew that an attraction between himself and a patient would interfere with physical therapy treatment.

6. [Petitioner] knew in 1991 that it was not permissible for a licensed physical therapist to have a sexual relationship with a patient outside the office.

7. During his physical therapy education, [petitioner] was taught not to have sex with a patient.

8. Licensees, including [petitioner], should have known that it was in violation of the Physical Therapy Practice Act in 1991 to engage in full body hugs with a patient, kiss a patient on the lips, or have sexual intercourse with a patient.

Based on these findings, the Board concluded petitioner's conduct amounted to incompetence in violation of N.C. Gen. Stat. § 90-270.36(7) and could result in harm or injury to the public in violation of N.C. Gen. Stat. § 90-270.36(9).

Pursuant to section 90-270.36, grounds for disciplinary action against a physical therapist in North Carolina include "[t]he commission of an act or acts of malpractice, gross negligence or incompetence" and "conduct that could result in harm or injury to the public." N.C.G.S. §§ 90-270.36(7), (9) (2001). North Carolina's Physical Therapy Act, however, does not give a definition of what it means to be incompetent. *See* N.C.G.S. ch. 90, art. 18B (2001). " 'Where the language of a statute is clear and unambiguous, . . . the courts must give it its plain and definite meaning.' " *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) (citation omitted). "[C]ourts may . . . resort to dictionaries for assistance in determining the common and ordinary meaning of words and phrases." *State v. Martin*, 7 N.C. App. 532, 533, 173 S.E.2d 47, 48 (1970). According to Black's Law Dictionary, incompetence is defined as "[t]he state or fact of being unable or unqualified to do something." *Black's Law Dictionary* 768 (7th ed. 1999).

In this case, the Board's findings, as well as the evidence, fail to reflect how petitioner was unable or unqualified to perform his duties as a physical therapist. If anything, the findings indicate petitioner was a licensed physical therapist who had received the proper training and possessed the ability to apply this training. While a finding that petitioner ignored the rules of his profession by engaging in the conduct alleged by his patients may amount to malpractice or gross negligence, it is insufficient to justify the conclusion he was incompetent to perform his job. *See In re Dailey v. Bd. of Dental Examiners*, 309 N.C. 710, 725, 309 S.E.2d 219, 228 (1983) (findings of fact based on the evidence must support conclusions of law).

The Board's findings are also silent as to the potential harm the public could suffer as a result of petitioner's conduct. I realize our

Supreme Court has previously held that "a general risk of endangering the public is inherent in any practices which fail to conform to the standards of 'acceptable and prevailing' medical practice in North Carolina," and that "[t]here is no requirement . . . that every action taken by the Board specifically identify or address a particular injury or danger to any individual or to the public." *In re Guess*, 327 N.C. 46, 52-54, 393 S.E.2d 833, 837-38 (1990) (emphasis omitted), *cert. denied*, 498 U.S. 1047, 112 L. Ed. 2d 774 (1991). *Guess*, however, was decided pursuant to N.C. Gen. Stat. § 90-14(a)(6), which "allow[ed] the Board to act against any departure from acceptable medical practice, 'irrespective of whether or not a patient [was] injured thereby.' " *Id.* at 53, 393 S.E.2d at 837 (citation omitted); N.C.G.S. § 90-14(a)(6) (2001) (disciplinary grounds under the Practice of Medicine Act include "[u]nprofessional conduct, including, but not limited to, departure from, or the failure to conform to, the standards of acceptable and prevailing medical practice, or the ethics of the medical profession, irrespective of whether or not a patient is injured thereby"). Unlike section 90-14(a)(6), the statute at issue in this case rests specifically on the potential for harm that could result to the public due to a therapist's conduct. *See* N.C.G.S. § 90-270.36(9). Accordingly, the Board was under a duty to make findings as to the harm that generally could result to patients, and thus the public, based on petitioner's conduct.[1] Such findings must be based on the evidence and cannot merely rest on the Board's expertise with respect to the practice of physical therapy. *See Leahy v. N.C. Bd. of Nursing*, 346 N.C. 775, 780, 488 S.E.2d 245, 248 (1997) (rejecting the petitioner's argument that the Board's order could not stand due to a lack of expert testimony defining the standard of care for registered nurses because there was evidence in the record which the Board could use its expertise to interpret). As there were, however, no findings that speak to the potential harm which can result when a therapist hugs, kisses, and engages in sexual

---

1. If the holding in *Guess* that "a general risk of endangering the public is inherent in any practices which fail to conform to the standards of 'acceptable and prevailing' medical practice in North Carolina" were to apply in the context of section 90-270.36(9) of the Physical Therapy Act, it would essentially read out of the statute the need for many of the other grounds warranting disciplinary action. *See* N.C.G.S. § 90-270.36(1)-(8); *Woodlief v. N.C. State Bd. of Dental Examiners*, 104 N.C. App. 52, 59, 407 S.E.2d 596, 600 (1991) (a dentist's negligence or incompetence is to be measured by the standard of practice). Such a construction would defeat the legislature's purpose in delineating more than nine separate grounds for disciplinary action against a physical therapist. *See Woodlief*, 104 N.C. App. at 58, 407 S.E.2d at 600 (citation omitted) (" 'the primary rule of [statutory] construction [states] the intent of the legislature controls' . . . [;] [w]e must avoid a construction which will defeat or impair the object of a statute").

intercourse with a patient and the evidence failed to establish such potential harm, the Board erred in concluding petitioner had violated section 90-270.36(9). I would therefore reverse the trial court's order affirming the Board's decision.