MARGARET ANN LEAHY, R.N., Petitioner v. NORTH CAROLINA BOARD OF NURSING, Respondent

No. 360PA96

(Filed 24 July 1997)

**1. Physicians, Surgeons, and Other Health Care Professionals § 14 (NCI4th)— revocation of nurse's license—findings supported by evidence**

Substantial evidence supported findings of the Board of Nursing as to instances of negligence or incompetence by a registered nurse upon which the Board based its order revoking the nurse's license.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 96, 99, 101.**

**Revocation of nurse's license to practice profession. 55 ALR3d 1141.**

**2. Physicians, Surgeons, and Other Health Care Professionals § 14 (NCI4th)— revocation of nurse's license—standard of care—expert testimony not required**

The Board of Nursing could properly revoke the license of a registered nurse even though there was no expert testimony defining the standard of care for registered nurses in the practice of their profession since the Board must know the standard of care in order to perform its duties under the Nursing Practice Act. The decision of *Dailey v. N.C. State Bd. Of Dental Examiners*, 309 N.C. 710, 309 S.E.2d 219 (1983) is overruled to the extent that it is inconsistent with this opinion.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 112, 113.**

**Revocation of nurse's license to practice profession. 55 ALR3d 1141.**

**Necessity of expert evidence in proceeding for revocation or suspension of license of physician, surgeon, or dentist. 74 ALR4th 969.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous unpublished decision of the Court of Appeals, 123 N.C. App.

354, 473 S.E.2d 694 (1996), reversing an order entered by Bowen, J., on 31 March 1995 in Superior Court, Wake County. Heard in the Supreme Court 15 April 1997.

This case involves the suspension of the license of a registered nurse. The petitioner was notified by letter from the North Carolina Board of Nursing that it had come to the Board's attention that she may have been negligent or incompetent in her actions as a nurse. The petitioner asked for a settlement conference. When the parties could not resolve the issues between them at the settlement conference, a hearing was held before the full Board.

Four witnesses who were either registered nurses (RNs) or licensed practical nurses (LPNs) testified as to instances of alleged negligence or incompetence of the petitioner. Gail Cone testified that she was an LPN who was on duty at the Community General Hospital in Thomasville on the night of 14-15 August 1991. A Ms. Clodfelter was a patient on the third floor of the hospital. Ms. Cone was assigned to Ms. Clodfelter, with the petitioner as her supervisor. Ms. Cone checked on the patient, whose respiration rate had dropped from twenty to eight. Ms. Cone went to the petitioner and told her of this drop. The petitioner did not go immediately to the patient, so Ms. Cone went back to the patient. When the respiration rate stayed at eight, Ms. Cone returned to the petitioner and said, "Peg, you really need to come check on the patient." The petitioner went to Ms. Clodfelter's room and after observing her, said the patient's respirations were deep and that she should be all right.

Approximately fifteen minutes later, at 5:00 a.m., Ms. Cone went to Lavern McCracken, an RN, and asked permission to leave the hospital. In response to a question from Ms. McCracken, Ms. Cone said her patients were all right except for Ms. Clodfelter, whose respiration rate had dropped to eight. Ms. McCracken asked if a doctor had been called, and when Ms. Cone said "no," Ms. McCracken and Ms. Cone went immediately to Ms. Clodfelter's room. A doctor was called, and he prescribed Narcan, which was administered.

Ms. McCracken testified that when she went with Ms. Cone to Ms. Clodfelter's room, Ms. Clodfelter did not respond to any verbal or tactile stimuli. She was barely breathing. Ms. Clodfelter responded to the Narcan and was moved to the intensive care unit. Lynn Boggs, an RN, also testified.

Sylvia Collins testified that she was a registered nurse and supervising nurse at Community General Hospital. On the night of 7-8

October 1991, a Mr. Clodfelter, who was not related to Ms. Clodfelter, was a patient on the third floor of the hospital. The petitioner was the charge nurse for Mr. Clodfelter. An LPN reported to Ms. Collins his concern about Mr. Clodfelter's urine color. Ms. Collins then assessed the urine and believed it was too bloody. She instructed the LPN to call the urologist and inform him of the situation. The petitioner countermanded Ms. Collins' order by telling the LPN not to call the urologist. Later that night, Ms. Collins again assessed Mr. Clodfelter. Upon finding that his urine had not changed color, she asked the LPN whether he had called the urologist, and he told her he had not. The petitioner joined them, and when Ms. Collins asked why the urologist was not called, the petitioner said there was no need to call him because the patient's vital signs were stable. Ms. Collins again told the LPN to call the urologist, and the petitioner countermanded this instruction before the call could be made. When Ms. Collins asked the petitioner why she had stopped the LPN from calling, the petitioner said she saw no reason to do so after assessing the patient.

Ms. Collins testified further that at 6:00 a.m., she went to Mr. Clodfelter's room to assess him. He was evidently suffering from congestive heart failure. The LPN called the doctor, and Mr. Clodfelter was given medication and moved to the intensive care unit. The petitioner told Ms. Collins that she had been to the patient's room at 5:40 a.m. to hang a 6:00 a.m. medication. The patient was breathing deeply, and she thought he needed to be turned and deep breathed. She left the room, completed her 6:00 a.m. "meds," and checked on other patients. Ms. Collins was concerned that the petitioner did not come to Mr. Clodfelter's room while Ms. Collins was treating him. The petitioner told her that she had a patient who was in severe pain and that she had to medicate him and give him an enema. When Ms. Collins asked which of the two cases was more important, the petitioner said Ms. Collins and the LPN were in the room, and she knew they could take care of the patient.

The petitioner testified on her own behalf. She also had the testimony of Elaine Troschrodt, an RN who testified as an expert on nursing care. Ms. Troschrodt testified that in her opinion the petitioner did not violate the standard of nursing care in her treatment of the two patients. The petitioner introduced into evidence an affidavit by Dr. Marvin W. Phillips, who was Ms. Clodfelter's attending physician, in which Dr. Phillips said the nursing notes indicated that this patient was appropriately monitored, that he was called in a timely manner, and that his orders were carried out appropriately. The petitioner

also introduced into evidence an affidavit by Dr. Oscar Blackwell, Mr. Clodfelter's attending physician, in which Dr. Blackwell said that in his opinion the patient was appropriately monitored and that he was advised in a timely manner of the patient's respiratory difficulties. The petitioner also introduced into evidence an affidavit of Dr. Paul Coughlin, a urologist who had performed a procedure on Mr. Clodfelter, in which he said that in his opinion the patient was appropriately monitored.

The Board found facts which were consistent with the nurses' testimony. It concluded that the petitioner violated N.C.G.S. § 90-171.37(4) to (8) by (a) failing to document the care rendered to Mr. Clodfelter, (b) failing to recognize the danger to Mr. Clodfelter of the symptoms of congestive heart failure and excessive bleeding, (c) failing to set her priorities appropriately in determining which patients presented the greatest danger and most needed her care on 8 October 1991, (d) failing to provide adequate follow-up to Ms. Clodfelter, (e) failing to recognize the importance of the prompt initiation of oxygen for Ms. Clodfelter, (f) failing to supervise appropriately the care given both patients by the LPNs, and (g) failing to make patient information available to another health-care professional, as evidenced by her failure to notify or to allow an LPN under her supervision to notify a doctor of the change in condition of patients.

The Board revoked the petitioner's license for one year. The superior court affirmed. The Court of Appeals reversed the superior court, and we allowed the Board's petition for discretionary review.

*Silverstein & Hodgdon, P.A., by Thaddeus B. Hodgdon, for petitioner-appellee.*

*Howard Kramer and Jordon, Price, Wall, Gray & Jones, L.L.P., by R. Frank Gray and Laura J. Wetsch, for respondent-appellant.*

*Allen and Pinnix, P.A., by Noel L. Allen, on behalf of the North Carolina State Board of Certified Public Accountant Examiners and the North Carolina Board of Architecture, amici curiae.*

*Bailey & Dixon, by Carson Carmichael, III, on behalf of The North Carolina Board of Pharmacy, amicus curiae.*

*Johnson, Mercer, Hearn & Vinegar, P.L.L.C., by George G. Hearn, on behalf of the North Carolina Veterinary Medical Board, amicus curiae.*

LEAHY v. N.C. BD. OF NURSING

[346 N.C. 775 (1997)]

WEBB, Justice.

[1] The petitioner first argues that under the "whole record" test, which must be applied in this case, there is not substantial evidence to support the findings of fact by the Board upon which it based its order revoking her license. *See Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 233 S.E.2d 538 (1977). The first finding of fact about which the petitioner complains is the finding that she did not adequately document the treatment of Mr. Clodfelter. Lynn Boggs testified, "Throughout the entire evening there was no documentation by Ms. Leahy although she was the RN on the case." This testimony supports the finding of fact.

The petitioner next attacks the Board's finding that she was negligent in failing to recognize the symptoms of congestive heart failure in Mr. Clodfelter. Ms. Collins testified that at 5:40 a.m., the petitioner was in Mr. Clodfelter's room and noticed he was breathing deeply. Nevertheless, she left the room to check on other patients. Twenty minutes later, at 6:00 a.m., Ms. Collins went to Mr. Clodfelter's room and discovered he was suffering from congestive heart failure. Ms. Boggs testified that the LPN documented Mr. Clodfelter's symptoms; the signs and symptoms indicated the patient was going into acute heart failure, but there was no indication the petitioner intervened. This testimony supports the finding of fact.

The petitioner next says the finding of fact that she did not make patient information available to another health-care professional by not notifying a doctor of the patient's change in condition cannot stand. She relies on the testimony of Ms. Troschrodt and the affidavits of Dr. Coughlin and Dr. Blackwell. Each of them said there was no need to call a doctor until 6:00 a.m. There was positive testimony from Ms. Collins and Ms. Boggs that the doctor should have been called earlier. The Board could accept this testimony rather than the evidence adduced by the petitioner.

The petitioner next attacks the Board's finding that the petitioner failed to set her priorities appropriately. This conclusion was based on the testimony of Ms. Collins and Ms. Boggs, each of whom testified that the petitioner should have been in Mr. Clodfelter's room when he was suffering from congestive heart failure rather than in the room of another patient. The petitioner introduced evidence to the contrary, but again the Board was the judge of the credibility of this testimony.

The petitioner says the Board's finding that she did not go immediately to Ms. Clodfelter's room when Ms. Cone told her Ms. Clodfelter's respirations had decreased to twelve per minute was not supported by the evidence. Ms. Cone testified that the respirations had decreased to eight per minute. This error in the finding of fact did not prejudice the petitioner.

The petitioner next says there is no evidence to support the finding of fact that when the emergency service to Mr. Clodfelter was being performed, she did not come to Mr. Clodfelter's room although she knew of the emergency. If the petitioner was unaware of the emergency, this would not change the outcome of the case. There are other findings of fact supported by the evidence which support the Board's conclusion.

Finally, the petitioner says there was not sufficient evidence to support the Board's conclusion that the petitioner "failed to recognize the importance of the prompt initiation of oxygen for Ms. Clodfelter on August 15, 1991." Ms. Boggs testified that one of the things that concerned her was that although the patient had described continuous chest pains for thirty minutes, no oxygen was administered for thirty-three minutes. This testimony supports the finding.

Considering the whole record, there was substantial evidence to support the findings of fact and conclusions of the Board.

[2] The petitioner argues and the Court of Appeals held that the Board's order cannot stand because there was no expert testimony defining the standard of care for registered nurses in the practice of their profession. The Court of Appeals relied on *Dailey v. N.C. State Bd. of Dental Examiners*, 309 N.C. 710, 309 S.E.2d 219 (1983), for this holding. We do not believe *Dailey* governs this case. The concern in *Dailey* was that the board would use its own expertise to decide the case without any evidence to support it. That is not the case here. There is evidence in the record which the Board could use its expertise to interpret, including its expertise as to whether the petitioner had violated the standard of care for registered nurses. From the record, we are able to determine the validity of the Board's action.

Article 3A of the Administrative Procedure Act, chapter 150B of the North Carolina General Statutes, governs disciplinary hearings by professional licensing boards. N.C.G.S. § 150B-41(d) provides in part, "An agency may use its experience, technical competence, and spe-

cialized knowledge in the evaluation of evidence presented to it." N.C.G.S. § 150B-41(d) (1995). The knowledge of the Board includes knowledge of the standard of care for nurses. The Board currently consists of nine registered nurses, four licensed practical nurses, one retired doctor, and one lay person. The Board is authorized to develop rules and regulations to govern medical acts by registered nurses. N.C.G.S. § 90-171.23(b)(14) (1993). It is empowered to administer, interpret, and enforce the Nursing Practice Act. N.C.G.S. § 90-171.23(b)(1), (2), (3), (7). The Board is required to adopt standards regarding qualifications of applicants for licensure and to establish criteria which must be met by an applicant in order to receive a license. N.C.G.S. § 90-171.30 (1993). To meet these requirements, the Board must know the standard of care for registered nurses in this state. There is no reason it should not be allowed to apply this standard if no evidence of it is introduced.

We can understand why the Court of Appeals applied *Dailey* as it did, but we believe our interpretation is better. So far as *Dailey* is inconsistent with this case, it is overruled.

For the reasons stated in this opinion, the Court of Appeals is reversed.

REVERSED.