An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-525

NORTH CAROLINA COURT OF APPEALS

Filed: 16 December 2014

GWENDOLYN GILLINS FENNELL
WIMES,
    Petitioner,

v.

NORTH CAROLINA BOARD OF
NURSING,
    Respondent.

Wake County
No. 12 CVS 16201

Appeal by plaintiff from order entered 3 February 2014 by Judge Robert F. Johnson in Wake County Superior Court. Heard in the Court of Appeals 8 October 2014.

*John M. Kirby, for Petitioner-appellant.*

*Allen, Pinnix & Nichols, P.A., by M. Jackson Nichols, Anna Baird Choi, and Catherine E. Lee, for Respondent-appellee.*

ELMORE, Judge.

On 3 February 2014, Judge Robert F. Johnson affirmed, in part; reversed, in part; and modified, in part, the North Carolina Board of Nursing's ("the Board") Final Agency Decision ("FAD") reinstating Gwendolyn Gillins Fennell Wimes's ("plaintiff") nursing license on a probationary basis. On

appeal, plaintiff argues the trial court erred by: (1) affirming the Board's imposition of probationary conditions, (2) failing to find that the FAD was arbitrary and capricious, (3) affirming the Board's use of official notice despite the absence of evidence of the noticed facts in the record or notice to plaintiff prior to the hearing, and (4) affirming the Board's erroneous seventh finding of fact. After careful consideration, we affirm the trial court's order.

## I. **Background**

On 17 May 2013, the Board decided to reinstate plaintiff's nursing license subject to probationary conditions for a period of six months following a reinstatement hearing. The Board issued its FAD after the following evidence was presented: In February 2005, the Board received a complaint from the staff at Erwin Rehabilitation Center ("the Center") concerning plaintiff. Specifically, the Director of Nursing at the Center learned that a nurse was "not acting right" and appeared to be "sleeping[,] standing up at the cart[.]" The Director discovered plaintiff, a nurse at the Center, leaning on a cart holding a syringe in her hand with her eyes closed. Plaintiff exhibited indicators of impairment such as slow movement, slurred speech, and delayed

response time in answering questions. When questioned, plaintiff admitted having taken Valium before coming to work.

On 25 July 2005, plaintiff met with Donna Mooney, the Board's investigator, to speak about the incident. During the meeting, plaintiff admitted that she had taken Valium in connection with a back surgery conducted five and a half years earlier. She also admitted that "her depression had something to do with that as well." The pair also discussed certain deficiencies in plaintiff's documentation with respect to medications she had administered to her patients. Mooney also observed that throughout the meeting, plaintiff's eyes appeared droopy and her speech slow.

Plaintiff declined to participate in the Board's alternative program for chemical dependency, and she voluntarily surrendered her license on 25 July 2005. Mooney told plaintiff that a voluntary surrender is public information, is considered a formal disciplinary action, and would be reported as an impaired-on-duty case. Plaintiff signed a consent-to-surrender form on 25 July 2005. The form explained that she would have to provide all evidence requested by the Board before any future petition for reinstatement would be considered.

During the next few years, plaintiff sent letters to and called the Board requesting reinstatement of her license. Each time, she received a response letter from the Board explaining the reinstatement process, including the "steps necessary for an individual to take in order to meet requirements for reinstatement of the license." Kathleen Privette, the Board's Manager for Drug Monitoring Programs, sent plaintiff at least four letters explaining what documents plaintiff should submit in order to be considered for reinstatement.

During this time period, plaintiff participated in a drug screening program as one of the prerequisites for her reinstatement. Screening began on 14 November 2011, but plaintiff failed to call on each of the next three days to determine if she was to test.

On 12 December 2011, plaintiff tested positive for Benzodiazepine and metabolites of alcohol. Plaintiff claims she tested positive due to her consumption of prescription Geritol. However, since she failed to submit a Prescription Identification Form in accordance with the drug screening program guidelines, plaintiff was considered to have failed this screening.

On 19 and 27 January 2012, plaintiff tested positive for codeine, hydrocodone, morphine, nordiazepam, oxazepam, and temazepam. Once again, because plaintiff did not submit the Prescription Identification Forms in connection with her prescriptions prior to testing, she failed these screens.

On 9 February 2012, plaintiff failed to report for another drug screen and was required to begin a four-month-long drug screening process. Plaintiff subsequently filed a petition for reinstatement.

Following a full evidentiary hearing, the Board entered its FAD on 17 May 2013, ordering that plaintiff's license would be reinstated, following completion of a Board approved refresher course, subject to probationary conditions that would remain in effect for six months. The conditions included:

> 1. Must comply with the Board's Probation Program. Licensee shall fully comply with the terms and conditions of the Probation Program established by the Board and cooperate with representatives of the Board in its monitoring and investigation of the licensee's compliance with the Program.
>
> 2. May not serve in a volunteer position in any healthcare related licensed position while under probation conditions.
>
> 3. Must notify the Board, in writing within five (5) days of any change in address or Employment status. This includes new employment or probation, suspension,

termination/resignation from employment.

. . .

4. Must inform prospective supervisor of probation conditions during the interview process and share a copy of these conditions prior to beginning employment.

5. Must have quarterly written performance reports submitted to the Board from all employers. The quarterly reports must involve three (3) consecutive months of employment in the same facility and must show an average of sixty four (64) hours worked per month.

6. Must continue to perform duties in a safe and competent manner, satisfactory to the Board.

7. Must notify the Board, by telephone within 24 hours and, in writing, within five (5) days of any DUI, misdemeanor/felony charges. Following final disposition of the charges, notify the Board, by telephone, within 24 hours, and in writing, within five (5) days of the outcome.

8. During the period of probation shall appear in person at interview/meetings as directed by the Board.

9. All conditions of this probationary license shall be completed within twelve (12) months or this license shall become void unless modified by the Board.

10. Must submit to random drug screens showing chain of custody.

11. Must remain alcohol/drug free.

12. Must submit within five (5) days

healthcare provider medication reports to the Board when prescription medications are ordered or refilled.

13. Must submit a statement to the Board in writing within three (3) days when takes an over the counter antihistamine, decongestant, or cough syrup.

Plaintiff appealed the FAD to Wake County Superior Court. The trial court affirmed the FAD, in part; reversed the FAD, in part; and modified the FAD, in part. Most notably, the court changed Probationary Condition No. 9 to provide, in relevant part:

> Licensee will be issued a Probationary License for six (6) months but not longer than twelve months to successfully comply with all conditions. If conditions are not completed after twelve (12) months and Licensee desires additional time to fulfill such conditions, Licensee may request to appear at Licensure Review Panel (LRP) to request an extension of probationary conditions in order to complete the conditions. If Licensee does not request to appear before LPR, the license will be suspended in accordance with the Order. The probationary period may also be modified by mutual consent of parties.

## II. **Analysis**

### A. **Probationary Conditions**

Plaintiff first argues that the trial court erred in affirming the probationary conditions imposed by the Board

because those conditions were in excess of its statutory authority. *See* N.C. Gen. Stat. § 90-171.37(1)-(8) (2013). Specifically, she claims that before the Board could place restrictions on her nursing license, it was required to make one of eight findings (or justifications) set out in N.C. Gen. Stat. § 90-171.37. *See id.* In this case, plaintiff claims the FAD does not contain the required findings. As such, she argues the Board erroneously imposed conditions on her nursing license. We disagree.

In examining the Superior Court's review of an agency's decision, this Court must inspect the court's order and ask: (1) "whether the trial court exercised the appropriate scope of review[,]" and, if so, (2) "whether the court did so properly." *Amanini v. N. Carolina Dep't of Human Res., N.C. Special Care Ctr.*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118–19 (1994). In reviewing an agency's decision, the duty of the Superior Court and this Court "is not to make findings of fact, but rather to apply the appropriate standard of review to the findings and conclusions of the underlying tribunal." *Brunson v. Tatum*, 196 N.C. App. 480, 484, 675 S.E.2d 97, 100 (2009) (citation and quotation marks omitted). On appeal, questions of law receive *de novo* review, while questions of fact are reviewed under the

whole record test. *Early v. Cnty. of Durham, Dep't of Soc. Servs.*, 193 N.C. App. 334, 341, 667 S.E.2d 512, 519 (2008).

Assuming *arguendo* that N.C. Gen. Stat. § 90-171.37 governs, as plaintiff contends, the trial court did not err by affirming the Board's decision because the Board made the required findings.

This Court has recognized a lack of case law pertaining to N.C. Gen. Stat. § 90-171.37. *See Cafiero v. N. Carolina Bd. of Nursing*, 102 N.C. App. 610, 619, 403 S.E.2d 582, 587 (1991) ("Petitioner cites no case construing § 90-171.37, and we are aware of none."). Therefore, in interpreting the statute, the plain language of the statute and the intent of the legislature controls. *See In re Hardy*, 294 N.C. 90, 95, 240 S.E.2d 367, 371 (1978).

The precise language of N.C. Gen. Stat. § 90-171.37 does not expressly require specific findings of fact, but rather broadly specifies eight grounds on which the Board may refuse to issue a license or impose probationary conditions upon a licensee:

> [T]he Board shall have the power and authority to . . . invoke other such disciplinary measures, censure, or probative terms against a licensee as it deems fit and proper; in any instance or instances in

which the Board is satisfied that the applicant or licensee:

(1) Has given false information or has withheld material information from the Board in procuring or attempting to procure a license to practice nursing.

(2) Has been convicted of or pleaded guilty or nolo contendere to any crime which indicates that the nurse is unfit or incompetent to practice nursing or that the nurse has deceived or defrauded the public.

(3) *Has a mental or physical disability or uses any drug to a degree that interferes with his or her fitness to practice nursing.*

(4) *Engages in conduct that endangers the public health.*

(5) Is unfit or incompetent to practice nursing by reason of deliberate or negligent acts or omissions regardless of whether actual injury to the patient is established.

(6) Engages in conduct that deceives, defrauds, or harms the public in the course of professional activities or services.

(7) Has violated any provision of this Article.

(8) Has willfully violated any rules enacted by the Board.

N.C. Gen. Stat. § 90-171.37 (emphasis added).

While the Board in this case neither utilized the precise language of the statute in its FAD nor labeled its statements "findings of fact," it did reference a concern for public safety, as well as the enumerated grounds of drug use and public health as the justification for imposing probationary conditions in the following findings:

> 4. It was reported that on January 14, 2005, [plaintiff] was observed "sleeping standing up at the cart" and was described as "not acting right." The Director of Nursing specifically described her as standing in front of the medication cart with a syringe in her hand, elbows propped on the cart with her eyes closed. She was described as being slow to respond verbally and physically, her words were slurred, very slow and deliberate, all behaviors that could be construed to demonstrate impairment.
>
> . . .
>
> 25. At the time of surrender of her license, [plaintiff] was alleged to be impaired on duty. She admitted to consuming a Valium, a drug that could impair her ability to practice nursing prior to work. [Plaintiff] admitted that she still has a valid prescription for this medication. It is reasonable, prudent and consistent with ensuring that [plaintiff] is a safe practitioner to require she submit to random urine drug screens upon re-entry into the practice of nursing.
>
> 26. Without these safeguards in place, the Board cannot fulfill its mandate to ensure that [plaintiff] is safe and competent to practice.

Taken together, these findings demonstrate that plaintiff used a drug to a degree that interfered with her fitness to practice nursing, and engaged in conduct that endangered the public health, such that probationary conditions were appropriate pursuant to N.C. Gen. Stat. § 90-171.37. *See id*.

Because the Board's findings of fact satisfy the requirements of N.C. Gen. Stat. § 90-171.37, the trial court did not err by affirming the Board's FAD with respect to this issue.

## B. <u>Arbitrary and Capricious</u>

Next, plaintiff argues that the probationary conditions imposed by the Board are arbitrary and capricious as a matter of law. Specifically, plaintiff asserts there were no grounds for the imposition of conditions because she was never disciplined for misconduct and that the conditions imposed were overly burdensome. We disagree.

In determining whether the Board's action was arbitrary and capricious, this Court must apply "the whole record test." *See Early*, *supra*. "When utilizing the whole record test, . . . the reviewing court must examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence." *Mann Media, Inc. v.*

*Randolph Cnty. Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 17 (2002) (quotation marks omitted). Substantial evidence is any relevant evidence which is reasonably adequate to support a conclusion. *Lackey v. N.C. Dep't of Human Res.*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). "The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Wake Cnty. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

In determining whether an agency's action was arbitrary and capricious, we have previously held the test is whether the action was "patently in bad faith, or whimsical in the sense that they indicate a lack of fair and careful consideration or fail to indicate any course of reasoning and the exercise of judgment[.]" *Lewis v. N. Carolina Dep't of Human Res.*, 92 N.C. App. 737, 740, 375 S.E.2d 713, 714 (1989) (citations and quotation marks omitted).

In this case, to ensure she was fit to practice, the Board conditioned plaintiff's relicensing on the taking of a refresher course and the maintenance of a probationary license with conditions placed on it for a term of six months. The Board

imposed these conditions based on evidence that in 2005 plaintiff took Valium prior to her shift, acknowledged overusing the substance in connection with her depression, and lacked complete documentation of medication dispensed during her shift.

Furthermore, the FAD contained findings that, while seeking reinstatement of her license, plaintiff did not comply with the Board's requirements when she failed to appear for drug testing, failed to submit requisite Prescription Identification Forms in a timely manner, and tested positive for banned substances. Evidence of plaintiff's conduct in 2005 and her subsequent drug screening failures amount to "substantial evidence" supporting the imposition of probationary conditions on her license.

In light of plaintiff's conduct, the probationary measures are not "patently in bad faith," lacking a rational connection to the Board's concerns, or unduly burdensome because they directly further the Board's objective of ensuring plaintiff can safely and competently practice as a nurse over a reasonable period of time. *Id*. Additionally, the trial court adjusted the probationary period to plaintiff's benefit, extending the window of time for completing the conditions to twelve months. As such, the Board's FAD imposing probationary conditions upon plaintiff's license was not arbitrary and capricious.

Accordingly, we hold that the trial court did not err by affirming, in part, and modifying, in part the FAD on this issue.

## C. Official Notice

Next, plaintiff argues the Board improperly took "official notice" that "Valium is a Scheduled [sic] IV Controlled Substance . . . that may impair an individual's ability to render safe and competent care." While plaintiff does not dispute the Board's authority to take official notice, she contends that no evidence of the supposed effect of Valium was presented to the Board, and therefore, such notice was unsupported by the evidence. Plaintiff also claims she was denied the "earliest practicable" notice when the Board decided to mention the effects of Valium in its order. We disagree.

### i. No Evidence in the Record

Plaintiff argues the noticed facts concerning Valium are unsupported by evidence in the record. Even if this is true, it does not bar the Board from taking official notice of the fact that Valium may impair a nurse's ability to render safe, competent care to patients.

Pursuant to N.C. Gen. Stat. § 150B-41(d) (2013), "[o]fficial notice may be taken [by an agency] of all facts of

which judicial notice may be taken and of other facts within the specialized knowledge of the agency. . . .  An agency may use its experience, technical competence, and specialized knowledge in the evaluation of evidence presented to it."  The Board's specialized knowledge "includes knowledge of the standard of care for nurses[,]" and thus, "[t]here is no reason it should not be allowed to apply this standard if no evidence of it is introduced."  *Leahy v. N. Carolina Bd. of Nursing*, 346 N.C. 775, 781, 488 S.E.2d 245, 248 (1997).

In the case at bar, the Board's knowledge of the relevant standard of care coupled with the availability of sufficient resources to permit it to quickly determine the possible impairing effect of Valium on an individual allowed the Board to take official notice without evidence in the record relating to Valium. *See* N.C. Gen. Stat. 8C-1, Rule 201 (2013).

ii.  <u>Earliest Practicable Notice</u>

Next, plaintiff argues that the Board erred by failing to provide notice of the noticed fact before the time of the hearing.  We disagree.

N.C. Gen. Stat. § 150B-41(d) simply requires the Board to inform the parties of the noticed fact "at the earliest practicable time."  N.C. Gen. Stat. § 150B-41(d).  While we can

find no case law defining this term within the context of an administrative hearing, the plain language of the statute does not require prior notice before a hearing. The statute merely requires notice as early as is practicable, depending on the circumstances of each case. *Id*.

Here, there is no evidence in the record that either party requested that the Board take official notice that Valium may impair a nurse's ability to provide appropriate and safe care to a patient. As such, the earliest practicable time the Board could have taken official notice was when it evaluated the evidence presented during the hearing. As such, plaintiff could not have received notice before the hearing. Thus, the Board complied with its statutory obligation to provide the earliest practicable notice. As such, the trial court did not err by affirming the FAD with respect to this issue.

## D. **Seventh Finding of Fact**

Finally, plaintiff argues the FAD's seventh finding of fact is unsupported by substantial competent evidence. The finding of fact provided:

> Once questions were raised about [plaintiff's] behavior, a limited accountability audit was conducted on her sign-outs of Valium, Percocet and Oxycodone. Discrepancies were noted in her sign-outs of Percocet. [Plaintiff] during the hearing

admitted that she was shown the Medication Administration Records (MAR) during the investigation in the facility, and that she did make a medication error involving the Percocet.

Specifically, plaintiff argues there was no testimony before the Board regarding the audit or discrepancies within her paperwork. We disagree.

"[W]here the findings of fact of an administrative agency are supported by substantial competent evidence in view of the entire record, they are binding on the reviewing court[.]" *N. Carolina Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 663, 599 S.E.2d 888, 897 (2004).

During the reinstatement hearing, Mooney testified:

I also showed [plaintiff] copies of her documentation, which had some discrepancies related to the documentation of her medications during her shift, and she finally, after looking at the documentation, admitted that there was some documentation lacking . . . [and] that she was taught that if the medication wasn't documented, then it was not done; it had not been given.

Plaintiff also stated that, "[i]f I made a medication error, and [the Board] said that I made a medication error, I didn't sign the MAR, then I'm willing to take the medication error . . . course, because they did not write me and tell me anything other than the fact that I made a medication error."

Taken together, such testimony provides substantial competent evidence that an audit occurred and there were discrepancies within plaintiff's documentation. Accordingly, the trial court did not err by affirming the FAD with respect to this issue.

### III. <u>Conclusion</u>

In sum, we conclude that the Board's FAD was not arbitrary and capricious. The Board imposed lawful probationary conditions against plaintiff's license and properly took official notice that Valium can impair a nurse's ability to provide safe and competent care. Moreover, the Board's seventh finding of fact was supported by substantial and competent evidence. Accordingly, the trial court did not err by affirming, in part, modifying, in part, and reversing, in part, the FAD.

Affirmed.

Judges BRYANT and ERVIN concur.

Report per Rule 30(e).